

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK J. HALPERIN, | ) |
| Plaintiff, | ) |
| v. | ) No. 10 CV 4104 |
| | ) Honorable William J. Hibbler |
| THOMAS HALPERIN, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Halperin brings this lawsuit against his brother, Thomas Halperin, alleging that Thomas mismanaged their family owned company, Commercial Light Company. Patrick's complaint includes claims for breach of fiduciary duty (Count I) and violation of the Illinois Business Corporation Act (Count IV). Thomas has moved for summary judgment on both claims, arguing that they must be brought in a shareholder derivative action, and also that Patrick's breach of fiduciary duty claim is time-barred by the applicable statute of limitations. For the following reasons, the Court denies Thomas's Motion.

### I. Factual Background

Commercial Light was a closely held corporation, operated by three generations of the Halperin family. It provided electrical contracting services in the Chicago metropolitan area from 1915 until it closed in 2008. (Pl. Rule 56.1(b)(3) Statement (hereinafter "Pl. St.") ¶ 1.) Brothers Patrick, Thomas, and Daniel Halperin each owned one third of Commercial Light's common stock. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 11.)

Thomas ran the company, serving as its President, Chief Executive Officer, and Chairman of the Board of Directors. (Def. St. ¶ 9.)

1

## A. Executive Compensation

During fiscal years 1993 through 2000, Thomas Halperin, Executive Vice President Scott Morris, and Secretary/Treasurer Michael Sorden received in excess of $22 million in compensation (including bonuses) as follows: (Pl. St. ¶ 16)

|        | 4/1/93 through 3/31/94 | 4/1/94 through 3/31/95 | 4/1/95 through 3/31/95 | 4/1/96 through 3/31/96 | 4/1/97 through 3/31/98 | 4/1/98 through 3/31/98 | 4/1/99 through 3/31/00 | 4/1/00 through 3/31/01 |
|--------|---------|---------|---------|-----------|---------|-----------|---------|-----------|
| Thomas | $330,471 | $322,025 | $306,031 | $917,001 | $1,247,249 | $738,908 | $1,042,585 | $3,593,270 |
| Morris | $256,051 | $316,992 | $219,529 | $1,577,417 | $655,367 | $1,137,944 | $718,726 | $4,317,178 |
| Sorden | $166,398 | $189,379 | $199,836 | $697,740 | $344,384 | $547,259 | $364,284 | $1,892,982 |

Thomas did not disclose the above individual compensation information to anyone. (Pl. St. ¶ 21.) When Thomas sent the only other Board of Directors member, Stuart Edelstein, board minutes to sign and return, he purposely omitted the schedule listing executive salaries and bonuses. (Pl. St. ¶ 11.) Thomas stated that he did this because Commercial Light's officer compensation was none of Edelstein's business. (T. Halperin Dep. at 150, Pl. Resp. Ex. 3.) Edelstein never objected to the absence of those schedules or requested that they be included in future minutes. (S. Edelstein Dep. at 29, Def. Resp. to Pl. St. Ex. D.)

Thomas's brothers, Patrick and Daniel, were also left in the dark about the rising compensation paid to Thomas Halperin, Morris, and Sorden. Although Patrick and Daniel received certified financial statements from Commercial Light's auditor, Arthur Anderson, those statements only referred to the amount Commercial Light paid for executive compensation in the aggregate over a given year. They did not disclose the amount paid to each executive and did not make clear whether the line item designated for "Salaries & Wages - Executive" included just salaries or salaries plus bonuses. (Def. St. ¶ 18; T. Halperin Dep. at 350-52, Pl. Resp. Ex. 3.)

Thomas stated that if his brothers, Patrick or Daniel, had asked him for more detailed executive compensation information, he would have provided it to them. (T. Halperin Dep. at 198, 389, Pl. Resp. Ex. 3.)

As a condition to signing off on its 1999 and 2000 audit, Arthur Andersen required Commercial Light to certify various facts. As part of that process, Thomas executed a letter to Arthur Andersen representing that: "As has historically been our practice, the minutes of the Fiscal 1999 and Fiscal 2000 Board of Directors' meetings, including the Board approved officers' salary and bonus schedule, have been provided to all common stock shareholders of the Company." That representation was false. Commercial Light never provided Patrick or Daniel with board minutes or officer salary and bonus schedules. (Pl. St. ¶ 35.)

### B. The Florida Home and Sailboat

In 1996, Thomas purchased a home in Palm Beach Gardens, Florida (Pl. St. ¶ 24.) Commercial Light rented that home from Thomas pursuant to certain lease agreements. (*Id.*) Under those leases, Commercial Light made rental payments of $7,750 to $8,000 every month and paid all expenses incurred for use, maintenance, repairs, property management, improvement, and furnishing of the home. (Pl. St. ¶ 25.)

In 1999, Thomas caused Commercial Light to enter into a lease agreement for the rental of a sailboat from Conway Leasing, Inc. (Pl. St. ¶ 26.) Conway was a company owned by Commercial Light's Executive Vice President Scott Morris. Commercial Light paid Conway rent for use of the boat in the amount of $3,000 per month. (*Id.*) Commercial Light also paid the costs associated with the insurance, use, maintenance, repair, improvement, storage, and docking of the boat. (*Id.*) Commercial Light's certified financial statements, which Patrick received annually, disclosed the costs associated with both the Florida house and the sailboat, but did not disclose that Thomas and Morris had ownership interests in those assets. (Pl. St. ¶ 27.)

Patrick Halperin alleges that Thomas Halperin breached his fiduciary duties and violated the Illinois Business Corporation Act by wasting Commercial Light's assets through payment of unreasonable executive compensation and rental of the Florida house and sailboat.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## III. Analysis

In his motion for summary judgment, Thomas Halperin argues that Patrick lacks standing to sue directly and his claims should have been brought as a derivative suit on behalf of the corporation. He also argues that Patrick's claim for breach of fiduciary is duty is time barred under the five-year statute of limitations for such claims. The Court addresses each argument in turn.

## A. Derivative Suit

First, Thomas argues that because Patrick's claims rest on allegations of corporate mismanagement, which caused detriment to the corporation as a whole, his claims are derivative in nature, and he therefore lacks standing to sue in a direct action. In response, Patrick argues that, as shareholders of a closely-held corporation, Patrick and Thomas owed each other fiduciary duties similar to that of partners, and in such circumstances a shareholder can bring a direct action against a co-shareholder even if damages are based on loss of value of the corporation. (Pl. Br. at 9 (citing *Hoffman v. Szyszko*, No. 94 C 2357, 1995 WL 519815, at *6 (N.D.Ill. Aug. 30, 1995)).

Illinois law is clear that shareholders in a closely held corporation have fiduciary relationships to one another, just as partners in a partnership would. *Illinois Rockford Corp. v. Kulp,* 41 Ill.2d 215, 222 (1968). What is less clear, however, is whether one shareholder can bring a direct action against his co-shareholder for injuries suffered by the company as a whole. As described below, courts are somewhat divided on the question.

Generally, when an alleged injury is inflicted upon a corporation, a shareholder of that corporation is said to suffer only an indirect harm from the diminution in value of his stock. *In re Knight,* 60 Ill. App. 2d 457, 460 (Ill. App. 1st Dist. 1965). In that situation, the corporate body, rather than the individual shareholder, is understood to have standing to sue. *Id.* The most an individual shareholder can do is seek to bring a derivative action to enforce the rights of the corporation; and any resulting judgment would then go to the corporation as a whole.

An exception to the shareholder standing rule arises, however, when the alleged wrongdoing not only harms the corporation but also violates some duty owed directly to a shareholder. *Zokoych v. Spalding,* 36 Ill. App. 3d 654, 663 (1976) (general rule requiring

5

derivative action has "no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders"). In *Zokoych,* the Illinois Supreme Court held that where "the gravamen of the pleadings states injury to plaintiff upon an individual claim as distinguished from an injury that indirectly affects the shareholder or that affects the shareholders as a whole," the plaintiff has standing to bring a direct action. *Id.*

In interpreting *Zokoych,* courts have expressed divergent views regarding whether a plaintiff seeking to bring a direct action must allege a unique injury in addition to a unique theory of liability. Some courts have held that, so long as a plaintiff can state a unique theory of liability—*i.e.* indentify some duty that defendant owed plaintiff beyond defendant's duties to the corporation as a whole—plaintiff can bring a direct action even though the injuries he suffered were common to all shareholders. *Mann v. Kemper Fin. Co.,* 247 Ill. App. 3d 966, 974-77 (Ill. App. 1st Dist. 1993) (expressly rejecting defendant's argument that direct action must be dismissed because plaintiffs failed to allege an injury separate and distinct from their derivative injury).

Other courts have held that the injury itself must be unique to establish standing in a direct action suit. *Small v. Sussman,* 306 Ill. App. 3d 639, 643 (1st Dist. Ill. 1999) (affirming dismissal of direct action where no unique injury was alleged); *Elmhurst Consulting v. Gibson,* 219 F.R.D. 125, 127 n. 2 (N.D. Ill. 2003) (granting motion to dismiss for lack of standing to bring direct action; citing *Small,* 306 Ill. App. 3d 639.)

In this case, Patrick has alleged a unique theory of liability (arising from Thomas's fiduciary relationship to co-shareholders in a closely held corporation), but has failed to allege a unique injury, because the injuries he suffered were common to all shareholders. Ruling in line

with the *Mann* case quoted above, the Court finds that Patrick's failure to plead a unique injury is not dispositive of his claim. The fact that Patrick has a unique theory of liability—*i.e.* that Thomas's mismanagement not only damaged the company, but also violated his independent fiduciary duty to Patrick—is sufficient to establish standing. The Court chooses not to follow the lead of the *Small* and *Elmhurst Consulting* cases noted above. In interpreting Illinois state law, the Court must use its best judgment to predict how the Illinois Supreme Court would address the issues at bar. *Valerio v. Home Ins. Co.*, 80 F.3d 226, 228 (7th Cir. 1996). A close reading of the Illinois Supreme Court's opinion in *Zokoych v. Spalding* indicates that the Illinois Supreme Court did not mean to require a unique injury, and that if the question were put to it directly, that court would rule in line with the *Mann* court, finding that a unique theory of liability is sufficient to confer standing.

Accordingly, Patrick Halperin is entitled to bring his claims in a direct action against Thomas, and Thomas's Motion for Summary Judgment is denied in that regard.

### B. Statute of Limitations

Second, Thomas argues that Patrick's breach of fiduciary duty claim is time barred under the relevant statute of limitations. In response, Patrick argues that the claim is timely because Thomas fraudulently concealed his breaches of fiduciary duty, which effectively tolled the statute of limitations until Patrick discovered the alleged wrongdoing.

The statute of limitations for breach of fiduciary duty is five years. 735 ILCS 5/13-205. The limitations period is tolled, however, during any period in which the defendant conceals his wrongdoing from the plaintiff. 735 ILCS 5/13-215; *see, e.g., Hollinger Int'l, Inc.*, No. 04 C 0698, 2005 WL 589000, at *27 (N.D. Ill. Mar. 11, 2005) (statute of limitations tolled where directors and controlling shareholder fraudulently concealed corporate looting from plaintiff).

When the defendant owes plaintiff a fiduciary duty, silence alone can constitute concealment. *Chicago Park Dist. v. Kenroy,* 78 Ill.2d 555, 561 (Ill. 1980).

In this case, there is a factual dispute concerning whether Thomas either concealed rising individual compensation amounts from Patrick, or failed to disclose that information in violation of his fiduciary duty. Although Patrick received financial statements disclosing the total amount Commercial Light paid towards "Salaries & Wages - Executive," due to the very general nature of that disclosure, a jury could still reasonably conclude that Thomas failed to disclose the increase in compensation paid to Thomas, Morris, and Sorden specifically. A jury could also reasonably conclude that Thomas actively concealed compensation schedules because he falsely certified to Arthur Anderson that he had disclosed "Board approved officers' salary and bonus schedule," when in fact he never did. That evidence is sufficient to create a factual dispute concerning tolling of the statute of limitations, and thus prevents the Court from granting summary judgment on that basis.

## CONCLUSION

For the above reasons, the Court DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

_3/8/19_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
United States District Court